182 P.2d 97

**ROBINSON et ux. v. MERCHANTS PACKING CO., Inc.**

No. 4943.

Supreme Court of Arizona.
June 9, 1947.

Stanley A. Jerman and E. R. Thurman, both of Phœnix, for appellants.

Campbell & Rolle, of Yuma, for appellee.

STANFORD, Chief Justice.

The appellants in this action were the plaintiffs in the trial court and, for conven-

ience, we will style them hereafter as plaintiffs, and style the appellee as defendant.

Plaintiffs brought action in the superior court against defendant on two causes of action, one being for damages for breach of lease, and the second being for rentals past due prior to the breach of the lease. The case was tried before the court without a jury.

Plaintiffs were the owners of a certain slaughterhouse and equipment. A lease was prepared by the defendant for the signatures of both of the plaintiffs, as well as the defendant, and the lease was executed on June 19, 1945, by plaintiff Verne C. Robinson in the office of defendant, and then sent by plaintiff Robinson to Somerton, Arizona, where both of the plaintiffs and Mr. Campbell, the president of the company, resided. It was understood that the lease was to be signed by his wife and then delivered to Mr. Campbell for signature, and then returned to the secretary of the company, but instead the lease remained in the possession of plaintiff Verne C. Robinson until the latter part of July of that year, at which time he returned the same to the auditor of the company, but without the signature of plaintiff Dorothy Robinson. The lease was to terminate May 31, 1946, with right of renewal for one year. The defendants, however, took possession May 1, 1945, before the execution of the lease and commenced the operation of their packing house.

Plaintiff Verne C. Robinson was employed as a cattle buyer for the defendant company, and plaintiff Dorothy Robinson often accompanied him on the trips buying cattle. She also helped with office work in the packing company plant.

As a part of this whole transaction the plaintiff Verne C. Robinson represented to the defendant that he could and would secure for it grade A beef, and could operate the business of a slaughter house and meat plant to supply beef to the stockholders of the defendant who were then and there engaged in the retail meat business; that the defendant relied on the promise of the plaintiff Robinson and employed him to act as its manager and cattle buyer, but defendant alleged that plaintiff Robinson was unable to secure any substantial amount of grade A beef and instead secured a lower grade of meat known as "utility beef"; that he failed to devote his time to the business in question or exercise diligence, and as a result thereof the defendant was unable to continue operation of the business except at a loss of over $20,000 in a period of less than six months.

In August the defendant ceased operation of the packing plant, and on September 5, 1945, returned the plant to plaintiff Verne C. Robinson and disposed of his services.

Thereupon the action was brought in the superior court and judgment rendered in favor of plaintiffs on the second cause

of action in the sum of $1400, and certain interest and costs; the plaintiffs were denied any recovery under their first cause of action, from which judgment plaintiffs appeal to this court.

The question before this court is the validity of the lease in question.

Assignments of error specified by plaintiffs upon appeal are:

"1. The court erred in rendering judgment here upon appeal * * * thereby refusing judgment for damages in the first cause of action for $4,300 being the loss of rental at the rate of $700.00 per month from September 1, 1945, for a period of six months thereafter as provided in the lease. The lease provided as follows:

" 'This lease agreement may be terminated by either party hereto by giving to the other party six months' written notice prior to expiration, except that lessors shall not terminate this lease until after the lessee shall have recouped any losses which it may have suffered in its operation from the beginning of the term hereof.'

"2. The court erred in refusing to consider evidence that Mrs. Dorothy Robinson, wife of Verne C. Robinson, showing that she consented to a lease of community property, knew the terms and conditions thereof, and participated in and helped her husband as an employee and also helped another employee with his duties thereby knowing the nature of the provisions of the lease, as well as the existence of the lease, and the nature of the business carried thereby.

"3. The court erred in holding that a lease is ipso facto invalid and void because a wife fails to join her husband in the execution of a lease as a lessor.

"4. The court erred in holding that once a lease came into existence by possession being surrendered by lessors and accepted by lessee, that such a lease can be cancelled by and at the will of the lessee without cause and without requesting a lease from a wife who failed to sign the lease even though she knew the conditions and terms of the lease, and consented thereto and then instituted an action upon the lease for its enforcement.

"5. The court erred in refusing to consider uncontradicted evidence of ratification of a lease by a wife, executed by the husband alone, but not signed by the wife.

"6. The court erred in holding as a matter of law that a wife has absolutely no rights to enforce a lease, or sue for damages for a breach thereof, on community property executed by her husband alone with her full knowledge, consent and approval, and who joins in a suit to enforce the lease."

As to Assignment No. 1 plaintiffs quote Sec. 58-101, A.C.A.1939, on the statute of frauds, and also say: "This lease was made on the 19th day of June, 1945, and expired on May 31, 1946." We quote from the lease, which is in evidence: "The

term of this agreement shall be one year from June 1, 1945 and ending May 31, 1946." The testimony shows that the premises were occupied by defendant in May, 1945. Also, while the argument of plaintiffs as to Assignment No. 1 relies on the section cited, nothing in their pleadings has reference to an oral contract so that contention for this reason will not be further considered.

As to the second assignment of error plaintiffs contend that the testimony of Mrs. Robinson shows ratification of the lease in question, and counsel urges "that Mrs. Robinson would have been estopped under the theory of equitable estoppel had she attempted to terminate the lease, and therefore, the lease was valid and binding on all parties."

Plaintiffs submit the case of Hall v. Weatherford, 32 Ariz. 370, 259 P. 282, 284, 56 A.L.R. 903, a case where John W. Weatherford and Margaret J. Weatherford, his wife, brought suit against Hall to quiet title to certain property in Flagstaff, Arizona, and to recover possession of same. Weatherford signed the lease to Hall, but the same was not signed by Mrs. Weatherford, although she knew, at all times, what was going on concerning the lease. Plaintiffs quote: "If such conduct does not constitute an equitable estoppel, there is no such thing known to the law." Further, in reference to the Hall v. Weatherford case, supra, we quote the following: "In this case Margaret J. Weatherford, according to her own statement, knew that her husband and Mrs. Hall were about to execute a lease of the property; she was present at at least two meetings when the terms of the lease were discussed; she talked it over with her husband, even though she does not remember discussing it with Mrs. Hall, and does not claim that she, at any time before it was signed, made any objection to its execution. She was present when the lease was actually signed, and still remained silent; she knew before the money was expended that, relying upon the lease, Mrs. Hall was about to expend $6,500 in making permanent improvements which would revert to plaintiffs. Yet, notwithstanding all this, at no time does she claim that she ever made any protest, either to her husband or Mrs. Hall. * * *"

The facts in the Hall v. Weatherford case, supra, are entirely different from the facts in the case at bar. We have already related many other things that Mrs. Robinson knew about the affairs of the defendant. There is no proof that she was present when the terms of the lease were discussed and there is no proof that she discussed the matter with her husband or with the defendant herein. So far as the testimony shows, she was not present when the lease was signed. Neither was this a case of where a large sum of money was to be expended relying on the lease, where in the Hall v. Weatherford case the sum of $6,500 was about to be expended in making

permanent improvements upon the premises that Weatherford leased to Hall.

Sec. 71-409, A.C.A.1939, in part, is: "* * * A conveyance or incumbrance of the community property shall not be valid unless executed and acknowledged by both the husband and wife, * * *."

This court's case of Maricopa Laundry Co. v. Levandoski, 40 Ariz. 91, 9 P.2d 1014, is where the Laundry Company brought an action against J. E. Levandoski and Margaret L. Levandoski, his wife, to enforce specific performance of an option of sale contained in a lease given by defendant J. E. Levandoski to the Maricopa Laundry Company. The lease and option did not have the signature of Margaret L. Levandoski. By plaintiffs' complaint they allege, in part: " 'Plaintiff further alleges in this behalf that said real estate belongs to the community composed of the defendants herein as husband and wife, that said defendant, Margaret L. Levandoski, has at all times known of the agreement between plaintiff and her husband, J. E. Levandoski, and she has accepted the benefits and fruits thereof, and she is now estopped from declining to join in a deed to plaintiff in accordance with said option. * * *' "

The court in its opinion said: " * * * According to its own allegation, we must presume it knew the property to be community. In that case it was bound to know as a matter of law that the signature of defendant J. E. Levandoski to the lease conveyed no rights whatever as against the interest of either himself or his wife in the realty without her signature also. * * *."

In the foregoing case, although the opinion was rendered in 1932, the lease and option was drawn under Paragraph 2061, Revised Statute of Arizona, Civ.Code 1913. The Paragraph referred to, however, reads: "No conveyance, transfer, mortgage or incumbrance of any real estate which is the common property of husband and wife, or any interest therein, shall be valid unless such conveyance, transfer, mortgage or incumbrance shall be executed and acknowledged by both the husband and wife. * * *"

As to Assignment of Error No. 3 the same must fall for the reason that neither by the pleadings nor by the testimony given did the appellant attach any importance to that issue.

As to the 4th Assignment of Error plaintiffs contend that: " * * * since the lease was signed for the benefit of a third party (Mrs. Robinson), that she can sue under the terms of the lease for back rent and damages for breach of the lease."

Plaintiffs cite from the case of Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641, 644, as follows: "Appellant insists that there was a lack of mutuality both as to obligation and remedy for the reason that Byron Heap, only, signed the agreement. This conten-

tion is met by our holding in Steward v. Sirrine, 34 Ariz. 49, 58, 267 P. 598, 601, wherein we said: 'We think it is the well-settled rule of law that where one person agrees with another, on a sufficient consideration, to do a thing for the benefit of a third person, the third person may enforce the agreement, and it is not necessary that any consideration move from the latter. It is enough if there is a sufficient consideration between the parties who made the agreement. * * *' "

There is no testimony of an agreement between this husband and wife that Robinson do something for the benefit of Mrs. Robinson or that he execute the agreement for her benefit. We see no application of the Shreeve v. Greer case, supra, as in that case Greer authorized Heap to act for him in securing the contract in question.

■ Respecting Assignment of Error No. 5, it is the contention of the plaintiffs that before the defendant could avoid the performance of the terms of the lease it should have first demanded that Mrs. Robinson execute the lease. The facts already show that the lease was drawn with the wife's name in it; that it was sent out for her to sign. What may have caused the husband (Robinson) to hold the lease for some weeks does not appear in the testimony.

■ We believe the last two assignments, as well as other assignments of error already determined, will be better understood by the following cases of this court. The case of Hood v. Fletcher, 31 Ariz. 456, 254 P. 223, 225, is where the plaintiff sought to quiet title to a tract of land, the land having been leased by the record owner, one Berner, to defendants. When the lease was entered into Berner was a married man. His wife, however, was a resident of the State of Missouri and had never resided in Arizona; that subsequent to the execution of the lease Berner and his wife died intestate leaving as heirs appellants. The lease was executed by Berner only, his wife taking no part in the contract. The court said: " * * * It would seem that, as the former statute limited the cases requiring the wife's signature to deeds and mortgages, in the later statute it extended the requirement to include not only deeds and mortgages, but transfers, conveyances, mortgages, and incumbrances. This later statute is evidently much more comprehensive, including as it does the former provisions, and, in addition thereto, transfers, conveyances, and incumbrances, which would include the term 'lease.' * * *"

In this court's case of Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536, 538, it said: "Under the law, neither spouse may encumber, by mortgage or lease or otherwise, or sell or dispose of community realty without the consent of the other. It is necessary that they join in any such transaction affecting realty of the community. * * *"

The statute under which this case is tried, Sec. 71-409, supra, is the same, in so far as this case is concerned, as the statute under which the cases of Hood v. Fletcher and Maricopa Laundry Co. v. Levandoski, supra, were tried.

 There are some things which the opinions of this court have laid down and which have been the law for a long time which we follow. Principally that is true as to the recognition of the opinion of the trial court which had the privilege of observing the demeanor of witnesses and getting the facts first hand. So whether or not Mrs. Robinson, one of the plaintiffs, actually did put herself in a position where she should have been recognized, in all respect, as if her signature were on the lease, is a question for the trial court to determine, and it has determined it in this case.

In order that there may be no misunderstanding, this court, by its opinion, upholds the sacred right of the husband or wife not to be required to part with their rights to community realty without the same being sanctioned by their signatures, unless, as in the case of Hall v. Weatherford, supra, the enrichment of a spouse who would not execute a lease was so pronounced by valuable improvements and her knowledge of all the things transpiring that it would be a vain thing for us to say that that was not equivalent to her signature upon the lease.

As a shield to prevent the taking of community realty the law, as we have defined it, is the acme of protection, but as a weapon to compel the payment of money, it does not apply.

Judgment is affirmed.

LaPRADE and UDALL, JJ., concur.